Our second and last case of this morning. Rossiter v. City of Philadelphia and Ramsey, No. 16-1187. Ms. Brewer and Mr. Yanov. Good morning. May it please the Court, in the least broad behalf of Commissioner Ramsey, with the Court's permission, I'd like to reserve three minutes of rebuttal time. How much time do I have? Three minutes, please. Sure, absolutely. In June of 2012, it was not clearly established that dismissing a union member who had not engaged in affirmative union activity violated the First Amendment right of expressive association. How would you define the alleged right to association in this case? It's a right... Well, let me start with what the district court did. I realize this is a question for the other side as well, but what is your perception of what the alleged right is and what it is not, perhaps? Okay, thank you for that. The alleged right is not sort of a global right to associate with one's union. That's how the district court framed it. That is too broad for purposes of qualifying. I take it you, just to add to it, you mean passively associate? Yeah. Because this person wasn't active in the officer ranks. The right in this context is the associational right is triggered by someone... Here's what the right is. The right of expressive association in this context is someone individually advocating or organizing on behalf of his union. That is the right of association. Isn't there an associational right just to be a member, just to elect membership in a union? Isn't that the quintessential form of association? The quintessential form of association, if you will, is a form of private association outside of the work context. Here in the government employee context, with unions, it is somewhat different. It's that, and it's part of what we've seen in other contexts where the courts have struggled with sort of what's collective bargaining and what is governed by the First Amendment. Joining a union, being a part of a union, that may in some instances trigger a First Amendment right of expressive association. But for purposes of qualified immunity, you need more specificity. Because as here, we have 16,500 members of the union. And the only person in the police department who's not a member of the union is the commissioner. So if you're saying that just by virtue of being in the union, you have a First Amendment right of association, you're constitutionalizing every employment decision. Well, I would give you that probably. Could we go back, though, and in my plodding way, try to start with what we have left in the suit? Because it's gone through two district judges. Yes. And at the end of the day, it appears that the only thing left is a single claim or cause of action. Yes. Sounding in retaliation. Correct. You didn't prevail on your summary judgment motion there. Speaking only for myself, of course, I have some doubts about that ruling, but you're stuck with it. Okay. And that necessarily impacts on now how the qualified immunity question is framed as well. And what this case seems to come down to in the district court's opinion is plaintiff has produced evidence that could reasonably raise an inference that he was singled out to be sacrificed, whatever that means, because of the union's decision to advance a grievance. And that defendant would not have taken the action he did in the absence of plaintiff's association with the FOP. So there we have the but-for cause. The reason I say I'm not sure what singled out to be sacrificed means is that there was give and take during the negotiation process here. And going into it, the plaintiff knew he was subject to discipline of some sort. He just didn't know exactly what. Yes. And I guess plaintiff's position would be, well, when the union did not – when the union would not cave to what the commissioner asked for, I got the death penalty. I was terminated, which is eventually reinstated as well. Yes. That's right. So what does that – what does that single sentence with two clauses in it leave us with as a cause of action at the district court level? Okay. What – I'm asking – I'm answering this question on the merits. I think not as much as – I want to make sure you're not asking sort of the jurisdictional aspects of this, because I think we have – we have jurisdiction. Yes, I'm really starting at the beginning. Okay. Before we get to that. Okay. It is that he is claiming in – from those two sentences, he is claiming in a sense an inferred claim, an inferred associational claim. That it's not his own activity, but it is the activity of his union leaders that he is asking – he is asking – he is asking the court to address. So it's akin to – if you look at Bamey, which is the district court case that Rossiter cites, which is from 2014, where the person claimed a First Amendment right of expressive association claim from statements by his – you know, there are only two of them, but by the other union representative. So it's – so from our perspective with qualified immunity, what we're saying is not so much on the merits, but what we're saying is that under – in that moment in time, Commissioner Ramsey's conduct was objectively reasonable, because there wasn't case law to put him on notice of this unusual claim. You framed the qualified immunity issue pretty broadly, haven't you? Well, I framed it – I think that I framed it as – Repeat for me, if you would. I have framed it as the – that the associational right is triggered by someone individually advocating or organizing on behalf of a union. That is – that is the activity that triggers the First Amendment right of expressive association. So you're saying there has to be a public concern element? Yes, and there has to be a public concern element as well. Did you raise that public concern element before the district court? I didn't see it. We did. It was at pages 15 and 16 of the summary judgment memorandum, where we said that he had – Explicitly or merely by citation to a – It was by citation, but also by statement. We said he had to engage in constitutionally protected conduct, and it had to either be speech on a matter of public concern, or it had to be activity beyond his own personal concerns, those for – those in a union or otherwise. So we believe as well that if – so if I'm allowed to put a comma on my statement of the right at issue, it's actively individually advocating or organizing on behalf of the union on a matter of public concern. Ms. Grewal. Yes. Assuming we properly have jurisdiction. Yes. So if your appeal from the denial of qualified immunity. Yes. And you're arguing that there has to be a public concern. The right of association requires also a public concern. Yes. Why isn't the department and the chief's conduct in changing the disciplinary rules a matter of public concern, at least to the members of Lodge 5, the FOP? Well, I think to respond to your question, Judge Pfister, a matter of public concern has to be of concern to the public, not to the employees. And the fact that there are a lot of employees who are concerned about matters of terms and conditions of employment, that's kind of the stuff of the union. You said 16,000 members of the union? Yes. That's a lot of members of the public, isn't it? What the changes in the disciplinary rules did impacted all of them. It did impact all of them, but it impacted them as police officers, as city employees. But does it matter that Rossiter is not advancing that as an issue here? I mean, he wasn't – he is not adversely impacted because of that issue being advanced. That issue was as between the union and the commissioner. Yes. He was just kind of a bystander here. Well, he's one of – yeah, he's a bystander, as are the other members of the union. I mean, this is kind of back and forth over alleged unfair labor practices and discipline and reckoning periods and so on. Well, let's take it a step further. Why shouldn't the – I mean, I don't know how broadly we have to define the public to ascertain whether it was truly a public concern. Why shouldn't the people of the city of Philadelphia have a concern as to the rights that are provided to the members of the police force who protect them? Well, those rights are protected, and quite profoundly, I might add, by state labor law and collective bargaining agreements. That's number one. But in terms of what the kind of the – you know, what the public may or may not know, I mean, that's – for purposes of the First Amendment and the public concern requirement, it has to be matters outside of the department, matters that are beyond just the stuff of terms and conditions of employment. The fact that the scale is somewhat larger doesn't change that here. Well, what if the police just said the other day they had the blue flu and they said, you know what, if the commissioner is going to act like this, we're just not showing up for work. And all of a sudden the people in the city of Philadelphia, where are the police? That's a matter of – that would be a matter of public concern, wouldn't it? Well, but that's going well outside of the department there if people are not patrolling the streets. I mean, I think that – I guess my question is, and given those examples, it's pretty hard to define these questions of public concern. And the case law says they are very fact-specific. They are very fact-specific. I think we've set out both in our conversation today and I think also in our brief why Commissioner Ramsey's point of view is that this is not a matter of public concern. But if I can move to our qualified immunity context here – We're not even there. We're not even there. Let me ask you a question. Why do you need public concern? I mean, you've got the 2nd, the 4th, the 6th, and the 7th circuits say that in an associational claim you need it. The 5th and the 11th say you don't. The mighty 3rd has not. The mighty 3rd has not, yes. We're including that in our appeal. I mean, I know we're not quite at qualified immunity yet, but we're putting it there because I think that it shows that the law here is genuinely unsettled for purposes of qualified immunity, for purposes of clearly established law. We think we win on the first point, which is the lack of activity in the facility. But as an alternative point, just to show that in terms of the objective reasonableness of Commissioner Ramsey's actions, the fact that there's a split in the circuits on public concern – In effect, aren't you asking us to say that the district court improperly defined the constitutional right in question? Yes. Yes. That's the bottom line here. And that, as a result, Commissioner Ramsey is entitled to qualified immunity. Okay. Why don't we hear from Mr. Yanov, and we'll get you back on rebuttal. Okay. Good morning, Your Honors. I'm Dave Yanov with the Visa Firm for the Plaintiff Appellee, Detective Kenneth Rosser. Respectfully, I think that – Let's just – Yes. Hypothetically, I'm not asking you to concede this. If Officer Rossiter was fired solely because his union took action to oppose the Chief Ramsey's disciplinary policy, why shouldn't we conclude that that raises a matter of public concern if, indeed, public concern is needed? Why shouldn't you conclude that – Well, I think you should. If he was fired for that reason – Well, let me back up a bit. Under the – Assuming there's jurisdiction for this interlocutory appeal, this court's jurisdiction is then limited to whether the facts found by the district court, that the district court found a jury could find, whether there is something beyond – that allows recovery beyond the immunity analysis, or whether, given those facts, immunity would apply. We are required to accept the facts as the district court has framed them for purposes of the qualified immunity determination, right? Exactly, Your Honor. Now, the way the inquiry is framed, the way the immunity question is drawn, is for us to review and consider and reconsider. That's a legal issue. That's the distinction. And so there are really two associational claims here, two possibilities for our successful claim. The first one is the most direct one, and it's what the district court did find. So we have to follow that, find that a jury could find. And it's what Judge Smith, you referred to as – or in your question, isn't this the quintessential right? And this argument – That's an association claim, right? This argument that you have to be an active leader in the union to have constitutional protection is simply against the hornbook law of this nation, that the quintessential right Judge Smith referred to is to be a union member. As far back as 1945 in Thomas v. Collins, the Supreme Court said union membership – We're beyond that here. He is a union member. I don't know of any indication that anybody's claiming he should not be a union member or trying to dissuade him from being a union member. And the trial court found, the district court found, that a jury could find that he was fired because he was a union member, that he was made the sacrificial example for the union's opposition to this unlawful imposition of a new disciplinary code. What happened to the other three, by the way, that were also reportedly aligned with him in terms of the discussions between the deputy commissioner and the union officials? The other three were – they pled guilty to accepting reprimand. Yeah, they received lesser sanctions earlier on, didn't they? Right. I mean, that meeting started with the deputy commissioner said, Rossiter, you're going to get a reprimand and transfer. Here's what it is. This is your discipline, a reprimand and transfer. Then the meeting went on and said, oh, by the way, the commissioner needs that unfilled labor practices complaint against the imposition of the disciplinary code withdrawn. Union said no, and he said, if it's not withdrawn, Rossiter's fired. Is there anything unusual, though, about that kind of give and take? I know to an outsider, perhaps, it sounds harsh. But isn't that the very nature of negotiation that occurs pursuant to a grievance procedure enabled under a CBA? Well, I think the record here shows that both from the union side and from the management side, there had never been a use of the fate of an individual officer in terms of these negotiations. That's what McGrody, the person, the union member involved in the negotiations, said, that the FOP will give this and that, but we won't use the individual fate of a member to. And again, maybe, maybe, Your Honor, maybe. Really, really, really? Maybe. Well, this is what he testified, and the other side said how unusual it was. But maybe, Your Honor, he was saying that, taking your skepticism, maybe he was saying that in the context of this, of this sort of discipline. Now, maybe he was saying, okay, give a sick day here or something like that, or something that is a completely different animal from what we're talking about here. Well, a completely different animal, I mean, a sick day here or there, this or that, the individual maybe is still dealing with the rights or benefits of an individual employee. I just have a hard time thinking. It so happens that in this case, the determination was he should be terminated. That ends up sounding harsh, I admit. Well, I mean, that is what triggered the constitutional violation here, Your Honor. Wouldn't it have been a termination if it had been something short of termination? I think the law does say that discipline based on union membership is unconstitutional. That's correct. Could I take you back, because I'm afraid we might have sidetracked you. You indicated there were two rights or two paths that you were pursuing, and one was the quintessential right, and you didn't get a chance to get on it. I just want to make very clear on that first one, though, that the district court found that a jury could determine that he was fired because of his union membership. So under longstanding law, that's done. That's not only clearly established, that's hornbook law. You can't be fired because of your union membership. Those are the facts found by the district court, so I don't think we need to go any farther. Going farther, though, to the expressive association argument, and I think this is where if the public concern question is going to come in at all, it's going to come in this one. The expressive association argument is that it's more to the actual facts of the case, that he was fired because of his union leader's speech. Is that association or speech? So this is the question. So his roster is not speaking here, but that he's fired, and this is what has been defined as an expressive association claim. So you join a union that's a collective association, and the leadership is often the one speaking for you. If you are punished in the context of this claim, Ramsey has admitted that if he had fired those leaders of the opposition to his code, then he admits clearly established law would forbid that. So the idea that he could fire a more, to inflict the same retaliatory punishment and send the same chilling message he could fire a more rank-and-file union member, wouldn't be forbidden. That's the expressive association claim. And the Bennett case that counsel mentioned that we discussed, which did post-date the firing, but the important point there is unlike the firing because you're a union member, which is just so clear in the law, here we get into those areas where this court has said repeatedly that you don't need precise factual correspondence with a prior case, that officials are expected to follow general, well-developed legal principles, apply controlling law to their own circumstances, which can include novel circumstances. And this court held three weeks ago in the LOR versus School District Philanthropy case, we confirmed all this. So those cases, and the Bennett case to me, it's not that we're looking to them as precedent for what was clearly established, but they exemplify this very sort of application of developed legal principles that the law requires of officials. And that's where Judge Rambo said, look, basically what I just said a moment ago, she said, look, the knowledge of a government official that you can't fire the union representative for this speech, the one who's making this speech, can't be questioned. With that knowledge, she said, applying the general, well-developed legal principle, no reasonable official could think that they could turn around for that same retaliatory purpose and fire a more rank-and-file union member. The public concern question, if it was going to have any place in this case at all, it would be here, because I don't see what the question about public concern is in the first one. If you're fired because you're a union member, that doesn't even get to the issue. But if it has a place, is it a matter of public concern? The determination that it's unconstitutional to fire somebody because they're a union member, to me, equates with public concern. If it's unconstitutional, the reason that the speech context is different is because an employee, somebody who speaks, the speech may or may not be protected. What is the public concern here, if we get to that question? How do you articulate what the public concern is? The public concern, if you reach that question. Judge Fischer's previous questions have gone to that. If you reach the question of public concern, then you have to focus on this speech opposing Ramsey's introduction. Is it to public concern and or for what? How do we define the public concern? So this court has held repeatedly, and this court... I mean, the essence of it is that they filed the unfair labor practice about the disciplinary changes. That's what the complaint was about. That's the leadership's complaint for which Rossner was punished. So that's what you're saying, and you say the court accepted that. That's what we have to look at. Yeah, and this court has held, I mean, quoting the Zamboni case, this court has repeatedly found the public employee's criticism of the internal operations of their places of employment is a matter of public concern. And then there's a couple pages in our brief where we quote a number of cases by this court and the district courts following this court, union activities that necessarily entail substantial criticism of management raise public matters of public concern. I mean, just over and over. So I don't think that this issue was preserved. I don't think that... And let's stop right there because I asked Ms. Rule that very question about whether that issue had been raised in the district court. She maintains it was and cited me to, what, page 24 or whatever of their brief. 1516. 1516 of their brief in support of summary judgment. Yeah, so in that portion of the brief, the defendant is... Ramsey was making the argument that was the argument below, essentially. There's also the argument here, this idea that passive membership doesn't qualify. And in citing cases to support that, one of the cases they cite, and it's described as a public concern requirement. And so that's where it's stated. And then the brief moves right back to the main argument. And that's why you don't see any mention of it in a district court's decision because certainly the district court didn't think that was an argument. That would appear to be the case in the face of the district court's opinion. And that's really the basis for, you know, wherever you draw the line on waiver, I know that we'd be... So we cited these cases that say you have to, you know, really do a level of thoroughness. And Ms. Rule cited cases that say, you know, don't do a hyper-technical reading. But I think wherever you draw that line, this is the purpose, right? The purpose is so that the district court gets it. You know, they know that this is actually being argued. You have to at least make the argument sufficiently so that they know, the district court knows that you're arguing it and can address it. Mike, do you have further questions? Just to close, you mentioned that you thought that this was a labor law issue and not a First Amendment issue. Why so? No, I... I thought you... Just the opposite. No, yes, I'm... I thought you were arguing that labor law and not the First Amendment governs Rosseter's case. No, no, no, Your Honor. I think that the defendant did raise labor law, but even their argument, their labor law argument is dependent on the public concern argument. They say if there's no public... If the public concern requirement applies and it's not met here, then there are sufficient protections in labor law. Do you think that the public concern form applies to the association right under the First Amendment? I honestly don't logically see how it can, Your Honor, because as we were saying before, the public concern requirement is really to test whether... So whether an employee speaking in the workplace about something that has nothing to do with work, you test that to see whether the employer has a right for the efficient running of the office to say, this isn't allowed, even though it's speech, this isn't allowed. So it's a sort of limit on free speech in the workplace. And to me, the public concern requirement, by its very nature, and even in the Supreme Court case that extended to petition claims, petition also has to do with looking at whether they're raising a public concern versus, at least the first I can see in the expressive association claim we're talking about, but in the first one, yeah, I mean, going back to that point, Supreme Court saying union membership is protected, court saying you can't be fired, therefore, if it's protected because of union membership. I don't see where you come in then with a public concern question, and if you do, how it can't be answered yes every time. Thank you very much. Thank you, Your Honor. Ms. Sproul, would you mind following up on that? Perhaps we're talking about public concern, and it shouldn't actually be wrong of the association. No, it should, because the associational right is an applied right. It's derived from the rights of speech and petition. And what you do with an expressive association is you are associating for the purpose of someone else to speak and to petition to give a greater protection to an associational right, an applied right than a enumerated right. That's kind of contrary to Supreme Court case law. It says that we shouldn't have a hierarchy. And in terms of the courts that have so ruled, that's been part of the reasoning, if you look at Bowles or some of the other circuits, Second Circuit as well. And it's kind of a piece, as we were getting back to your conversation with Mr. Yanoff, Judge Smith, this is with the unfair, Vice President McGrody said, the unfair labor practice complaint about the four people that was sort of formed the nucleus of this case. It was withdrawn because basically the FOP thought it was standard issue labor relations. This may be something that to outsiders looks kind of, I don't know, upsetting or strange. But, you know, there's a monthly meeting between management and the union where they go over grievances and they go back and forth, and that's definitely part and parcel of what we were talking about, not only in the district court but in this court. Could we return to the question of whether or not you clearly or effectively raised the issue before the district court of public concern? Because I know what your response to me was previously, and your adversary mentioned just a few moments ago something that is readily demonstrable from a look at Judge McHugh's opinion, and that is he didn't take it on. Can't we conclude from that that he didn't see the issue as having been raised before him? You could draw that conclusion, but respectfully it would be incorrect. I think you can raise any number of issues in your filings. The court may elect to rule on it or not rule on another argument, find one argument dispositive and another argument not dispositive, but that doesn't mean we did not raise it below, and we did raise it below. I mean, the fact that the judge rules on it I think kind of cuts off all discussion of waiver, but that doesn't mean we didn't raise it. Does the First Amendment right to association put any limits on the department when it pressures unions in negotiations? How far can they go? Well, I think the First Amendment comes into play when there is a matter that goes outside of the basic realm of labor relations. That's what the Supreme Court was talking about in Smith. That was, in fact, a question that was inappropriately asked on the other side for some reason. But the question is, okay, you're arguing that labor law and not the First Amendment governs, but the point is when does the First Amendment right to association, what limits, what constraints does it put on the pressures placed on a union in negotiations? Because basically what you're doing is you're tying a union issue to an individual case. And at some point, I mean, what Judge McHugh says is jury's got to sort this out. And you're saying, well, they can only sort it out if they have a clearly established constitutional right and it isn't clearly established. I get it. Yeah. But when is the line crossed for future cases? For future cases, the threshold element here is First Amendment protected activity. So either the individual has to, if you look at this court's own case law, when someone is trying to organize a union and is slapped down for that, or when someone individually is advocating for a union and is slapped down for that. Or we can look at another case that was issued after the firing, that we also talked about in the briefs, Rowland, where, I mean, respectively I think the court should have used a Pickering and set up a Rutan analysis, but there the government laid off 2,800 union employees and no non-union employees in the context of collective bargaining. Yeah, that's a pretty easy case. Yeah, it is. And that's because This is more nuanced. This is more nuanced, but what I'm trying to get at, Judge Ambrose, is that in these sorts of nuanced situations, the balance tips in favor of labor law because the courts want to leave the ebb and flow of labor law to union and management. It's when it goes outside of the ebb and flow of labor law, that's when the First Amendment comes into play. What would happen, hypothetically, if the department here began summarily firing every person under disciplinary investigation because the union won't finish the negotiations pertaining to the disciplinary code? Okay. In that kind of situation, every person under disciplinary investigation? In other words, the ones that you think you now have a case against and we're saying, okay, we're going to do what Commissioner Ramsey did here. Just fire them. No hearing. Nothing. Okay. Gone. There, what you might have if we do, and there, believe me, we've got a lot of grievances going every month. That's like 40, 50 people. There, that might be a quantum of evidence where there is targeting based on union membership. There may be a heightened scale, some sort of widespread behavior that then would potentially implicate a matter of public concern. Is there a concern, speaking of future cases, as Judge Ambrose alluded in a previous question, does the city have a concern about future cases where discipline of an officer or employee follows the unsuccessful effort of the city or the commissioner to negotiate something as was attempted here and then the imposition of discipline such that everyone who is disciplined post a failed negotiation on a policy matter then has a right to sit? That's right. That's part of why we're saying this is labor law as opposed to the First Amendment. Understood. We have a lot of employees and we do the best we can. Understood. Thank you to both counsel. Thank you. Well-presented arguments. We would ask if you would get together with the clerk's office and have a transcript of part of this oral argument, but very much appreciate you being with us today. Okay. Thank you very much, Judge.